FARRALES v. ASHCROFT Good morning, Your Honors. My name is Piero Saldosorio, and I'm representing the applicants in this case. Your Honors, there is no issue as to the credibility of the lead applicant in this matter. Page 59 of the transcript states so much of the obvious credible testimony given by the applicant, and this was acknowledged by the immigration judge, and thank him so much for his honesty. Unfortunately, Your Honors, the immigration judge, despite the credibility of the applicant, despite the overwhelming evidence, refused to give due and significant weight to this evidence. This is shown and demonstrated when the applicant himself presented himself and showed the scars, two holes at the back of his head, a scar caused by abrasion, wound by another bullet. Well, I don't think the immigration judge said that he hadn't been shot. Indeed, he says specifically the evidence is credible enough to support the proposition that he'd been shot. But there was no weight given to this evidence. Well, he accepted it. You were shot. But was he shot for protected grounds? I think the grounds of the immigration judge's decision was not that he doubted whether the applicant had been shot, but rather whether he was able to establish a connection between that attack and the political ground for seeking asylum. Yes, Your Honors. And in that case, the case of Cardozo v. Conceca v. Ayanez comes into play, where in that case it says that persecutors are not required to give an affidavit of their acts of persecution. It being sufficient that the applicant meets the burden, which in the case of Bolaños v. Hernandez. Well, the question is, how do we know that it was his political opponents who arranged the shooting? The medical, the newspaper accounts, the police reports, statements by another witness, which were all branded as hearsay, obviously because this person. What did they say that tell you who it was who was doing the shooting? A witness, Romeo Urbina, heard people saying and threatening the applicant that he should not run for Congress in South Africa. At the time of the shooting? Not at the time of the shooting, Your Honor, but afterwards. It was impossible. It was impossible at the time. Okay. Well, that's what I'm trying to find out from you. You say it's not at the time of the shooting. You couldn't tell who it was who shot him from anything that happened. No event there. Yes. But that it's subsequent events when people came and threatened him that he should not run again. That's what makes the link. Is that it? Prior events, the nature of the practice of the applicant. He had no enemies except when he caught the eye of an opposing candidate in summer. And this is the only incident, and they can attribute it only to this group because he started campaigning. He was expressing his political views. Could I just point out, well, your main problem is you've got to show that the government was either unable or unwilling to protect him. There's no connection shown with the government. The government couldn't do anything, Your Honor. What? The government could not do anything at the time. What do you mean wouldn't do anything? He left the country. Well, he left the country. When did the government have a chance to do anything? He left the country because the party who caused this problem, the near-fatal shooting, is part of the government. There's no evidence that the government took any position on this. The government? Absolutely. No evidence. By omission, Your Honor. Don't you understand that? I respectfully submit, Your Honor, by omission, by failing to protect the applicant. What do you mean failing to protect him? An assassin tries to shoot somebody. The government is not unnoticed. The assassin is about to shoot. He was shot because of his political affiliation. No, wait.  What was the government supposed to do? Was the government unnoticed that he was about to be shot? The party in power at that time of the shooting is the government. The party in power is the government at the time. And the government, the party in power controls the government at that time. Are they supposed to know he's going to be shot? They're not. The government is supposed to protect its people. It's supposed to know. It's supposed to protect them at all times from a possible shot? That is a solemn duty. It might not be practical to do that, but that is the bounding duty of a federal government. That's a ridiculous claim. If I may say so, I just find it ridiculous. We submit on that. There's certainly a point at which we have to accept the fact that life has risks and uncertainties, and President Kennedy is assassinated, and it's not the government's responsibility. It's just unable to protect somebody perfectly. Is there anything here that suggests that the government in the Philippines at that time or today or at any time in between, if given the opportunity to do something, would refuse to take any action? The opposing party, Ramirez, was part of the political party in power at that time. They wielded tremendous influence. My client wouldn't do anything. Are there country condition reports in the record as to the general state of political violence in the country? At that time, there was just a change of government after the Marcos dictatorship. Everything was topsy-turvy, and groups invariably took over any position that they can and abused its authority. Well, there was a democratic government that replaced Marcos. It was a transition, Your Honors. And 20 years of totalitarian regime cannot restore the kind of democracy that we enjoy here. Who was the president of the Philippines? Corazon Aquino was installed by Virtual Revolution, Your Honor. There was a Corazon Aquino. Was she involved in this assassination? I don't think she was personally involved in this. Was her government refusing to protect someone running for office? I mean, it's a ridiculous assertion. Your Honor, Mr. Perales was shot. The person who shot him belongs to another political party. No, but not the government. Another political party that controls the government. Not the Corazon party. He belongs to that party, Your Honor. I don't think so. But anyway, the government is not involved. Well, the district court, I mean, the immigration judge didn't reach the question of whether the government could or could not control the people who shot him because it found that there was no evidence to support the conclusion that he was shot because of political persecution. So the question of if he was shot for political reasons, whether the government is either liable or whether it would fail to control was not decided by the immigration judge. So under whatever that case is recently where we have to remand for issues that aren't reached, that's an issue that the immigration judge didn't reach, Your Honor. It found there was no evidence that he was shot because of political views. There was a failure on the immigration judge to give significant weight on the evidence presented by the lead applicant because of other findings interrelated to this. One is that because Mr. Perales is residing in Metro Manila and he was campaigning in Eastern Samar. Philippines follows domiciliary theory. It is a common practice among politicians to be a registered voter in that place. Your Honor, one minute. If you want to rebuttal. I reserve that for rebuttal. Okay. May it please the Court. My name is Earl Wilson on behalf of the Respondent. Your Honor, the agency's order in this case finding Respondent removable and denying his applications for asylum and withholding of deportation is supported by substantial evidence. The critical issue in this case, first of all, it's not an issue of whether he was shot. The problem in this case is that Petitioner simply did not present any evidence. And, frankly, his testimony suggests that it was not political. He never presented any evidence that suggests it or certainly not compels the finding that he was shot on behalf of political reasons. Well, he did testify to this evidence is in the record that he was shot by people who spoke in that dialect from that other removed island where he was running for office. And this was in I guess was it in Manila or in the in the main island. But it was not the island where he lived, where he was campaigning and that the people who shot him spoke in that dialect. So that you there is evidence that they were from from the island where he was campaigning. Secondly, there is evidence that afterwards people came to his home and told the people at the home that he should not run for office or he would be in danger. Now, that's the basis. That's either enough to show that a shooting for no apparent reason of someone where the testimony is yet there was no other enemies. Is that enough to justify the finding that the reason for this otherwise unexplained shooting was political? I don't think so, Your Honor. This is the issue. Is that the issue? Well, I think the issue is whether Petitioner met his burden. Yeah. And the question is, does that evidence is that evidence sufficient to say that, yes, he met the burden. He was told afterwards that he had sent messages. Don't come back and run for office. And he was shot by people from that island when he wasn't. It was somewhere else. And there are other possibilities. It could have been robbers, except they didn't take any money. It could have been some husband who traced him to where he was on vacation. But there's no the only evidence that there is is that people did not want him to run for office. Well, Your Honor, assuming that, as you said, there are a number of other reasons. But that's not enough to compel a finding. The fact that the immigration judge decided that he was not going to decide the case in the light most favorable to the alien, when there are substantially other reasons to support the immigration judge's finding. Is there any evidence that supports any other reason? Well, Your Honor, his testimony says that clearly he doesn't know who shot him. He says, in fact, in the record it asks, you know, I've read the documents, sir. In any of the reports, documents, either the newspaper articles, the police reports, the medical reports, any of the documents you have, that you have given me, that you haven't ever given me, is there any indication from anyone that Mr. Ramirez was behind the shootings? He responds, I'm afraid none, Your Honor. That's true.  So the only evidence is that the people spoke the language from that remote island and that afterwards they came and people, unidentified men, came to his house a number of times. And they said, you know, he better not come back and run for office or he's going to be in danger. That's the evidence as far as I can tell. Your Honor, that's just clearly not enough to compel a finding. Well, that's what I said to you. That's the issue. Is that enough? There is no suggestion that he was shot for any other reason. It's the Petitioner's burden to show, not my speculation. Okay. You don't answer my question. When I say to you there's no evidence, is there, that he's shot for any other reason, I gather your answer is no, not whose burden it is. I didn't ask you whose burden is it. I said, is there any other evidence in the record? Can you answer that question? That he was shot for another reason? Yes. His own testimony suggests, Your Honor, that he may have been shot for because of his business relationship. And I think that's – that was indicated in his asylum application that, you know, or maybe one of the newspaper articles, that perhaps it had something to do with the businesses he was involved in. And I think that was his attachment to his – to his declaration. I'll try to just find out if that's the case here. Thank you. No, it wasn't business, ma'am. What he said in the affidavit was – I was going to say, the only other explanation – which page are you referring to, Your Honor? Page 364 of the record. He originally said it could have been the NPA, which would have also been a political reason. The only reason he said it's political, or because of the renewed campaign of the NPA to liquidate or kill businessmen who are known to support the continued stay of the U.S. bases in the Philippines. Those were the two possibilities he originally suggested. And I guess that's my answer to your question. It's also political. Well, I don't – assuming that that's political, assuming that it is, that's not what his claim is here. His claim is not that that's the reason. Clearly, it's changed at this point. What he's suggesting now is that – disregard this statement. Well, the reason it's changed is because that statement was made on June 12, 1990. On August 6, 1990, is when the affidavit came that the people came to his house on several occasions, and they said to him – they said to the people at his house, tell Attorney Ferales if he will run for congressman, we will liquidate him. Now, that might change your view of why he was shot. Your Honor, I was just responding to your question whether the record supported any other conclusion. What I'm suggesting is that that portion that we just read is another conclusion. Now, it could be that it supports both that conclusion and his later testimony supports another, and there are documents that support others. What I'm suggesting, Your Honor, is that there are other reasons suggested in the record. I think nonpolitical reasons that are not on account of his political views. I don't see this as being the basis of his political claim, Your Honor. I understand the Court may not be – this may not be the answer the Court wants, but the point is, if you accept this application and the declaration, that reason is another reason that, if you accept it, does not compel reversal of the immigration judge's finding at this point. Okay. If he was shot for a political reason by the NPA rather than by his – by the congressman's supporters, then he was not politically persecuted. Well, then that also, assuming that he was, that undermines his argument that he now has a well-founded fear of persecution, which is probably why he backs off of that claim. But I'll also point out something, Your Honor. If you look at the record to see the extent of his political involvement, on page 142, Petitioner says that he hadn't even officially announced his candidacy yet. There was no indication that he was even – the level of political involvement that leads to this conclusion that he was politically active is not based in the record. His testimony is not that he was a candidate. His testimony is not that he was running. His testimony is that he was essentially getting ready to run. And that's – given that testimony and his other statements in this record, I simply don't think that he – the record compels the finding that his political involvement is the reason why he was shot. The Court would have to make a tremendous leap to find in Petitioner's favor and probably would have to assume all of the evidence in the light most favorable to Petitioner while ignoring other evidence in the record that supports the immigration judge's finding. On a petition for review, that's – that's an argument that Petitioner could make before the IJ. But at this level, he has to show more than you can find three or four different ways, and I urge the Court to find my way. There is evidence in this record that supports the IJ. I think if his statement as to his political involvement is minimal. He had one theory to begin with and he shifted to another theory. The fact is he simply has not met his burden. I would also point out, Your Honor, that even assuming that he can establish the unaccounted-off problem, the alternate finding in this case here is that he does not have a well-founded fear of future persecution. The record establishes that there – the Filipino government is capable and is willing to take care of its citizens. The Laban party, which is the party that was associated – then the burden shifts. And because the immigration judge did not find past persecution, he didn't apply the burden. And he would – you would have to remand in order for him to examine the question of country conditions to see if the government rebutted the presumption. The IJ actually – didn't he assume or go on to say, assuming arguendo, that there was past politically predicated persecution, and then go on to make this alternative finding of changes? That's correct, Your Honor, because there's no question that shooting constitutes past persecution. But again, he goes to the next level. In fact, Petitioner's own testimony is that there's a Laban political party which is no longer in the government. He does not know where Mr. Ramirez is. There is no evidence that internal relocation cannot be accomplished. He is not even sure where Mr. Ramirez is. His family lives in the Philippines. His wife has returned there numerous times. He has two homes there. And that evidence, assuming that there was this incident that can be traced to his political involvement, more than overcomes the notion that he has a well-founded fear of future persecution, and it's sufficient to sustain the immigration judge's finding on that prong as well. In sum, Your Honor, I think the record in this case amply supports the immigration judge's two findings. And we ask that the petition for review should be dismissed. Thank you. Thank you, Your Honor. Good morning again, Your Honors. Quickly on the adverse inference given to the return of the wife to the Philippines. I don't think there should be an adverse inference because the wife was able to return to the Philippines. The return was unannounced. Secondly, the wife is not the lead beneficiary. There was no threat to her life even before. It was the threat to the life of the lead applicant is what is at issue here. On the question of credibility, there is no question of credibility. The immigration judge's ---- There's no question of credibility, so you don't have to discuss it. But the question ---- It's the weight, the significant weight that the immigration judge refused to give to the testimony of the witness. There is no evidence that the shooting was because of some other reason. There is no ---- We've only got a minute, and it's almost gone, so let me ask you. Yes. What about the last point that Judge Clifton raised, that if there is political persecution, that there's been a change in country conditions, and that's what the immigration judge found? The applicant has no way of finding out, Your Honor, because he was not able to return to the Philippines at that time. Well, but what does the record show about whether there is ---- it's now safe for him to return. He no longer has a well-founded fear. That's why I asked you originally, are there country conditions introduced into the record? We did not submit any country conditions. Not whether you submitted them. Are they in the record? Did the government submit them? I think the country conditions were submitted, Your Honor, but even now, even now, the political climate has not changed. It's the same. Well, one of the things that's unusual about this case, and I've had trouble with it, and I've got a half-baked idea now which is dangerous, and I'll think more carefully, but this is your chance to speak to it. Thank you, Your Honor. What's odd about this case is that the political motivation isn't or doesn't appear to be in any fashion ideological. Let's accept the theory that Mr. Ramirez was behind the shooting. Mr. Ramirez's motivation did not appear to be that Petitioner was his political enemy in terms of supporting a different philosophy. His motivation was that this guy is trying to take Ramirez's seat in Congress. It's a potential political opponent. So, what we really have here is a terroristic threatening to try to scare somebody out of taking Ramirez's job. Petitioner didn't run against Ramirez. Petitioner fled the country. Okay, 14 years have passed, and apparently Petitioner's not even sure where Ramirez is today. In those circumstances, is there any reason to think that Petitioner has any problem going back to the Philippines today? Not only has the country changed, but he's not running against Ramirez anymore, so maybe that problem's gone. On the contrary, Your Honor, the Philippines is situated differently from the kind of democracy that we practice here. These threats are continuing. If Mr. Ramirez is still around, the threat continues. If he is not around, certain persons who has assumed his position or not. Not if Petitioner's not running against him, it appears, that's the source of the concern. It's not the personality, Your Honor. I don't agree that this is a terroristic threat. It is not limited to Mr. Ramirez. It is a party action. It belongs to a group. He has been identified to be in that political party, the UNIDO. Mr. Ramirez is identified with another political party. The party survives the personality, Your Honor. If Mr. Perales returns and this party are still in power, I do not personally know at this time who is in power, whether that group is in summary, continues to be in power. It should be noted that the place where Mr. Perales is seeking to win a seat is in an island. It is a small locality. People there is controlled by clans, by certain families. It transcends from generation to generation. It's a dynasty, Your Honor. And it is safe at this time to assume that this party, this group, may continue to be in power, given the fact that Mr. Perales has shown that he is willing to evade and avoid, for personal reason, facing his adversary at that time. So if he returns, he is a sitting duck. He is a sitting target. They know how to deal with him. They did it before. They will do it again. Your Honor, I therefore submit and ask the Court to dictate the decision of the immigration judge and the BIN and grant the asylum application of the applicant. Thank you, Your Honor. Thank you. The case is submitted. The next case to be argued is, as I said, the cases of Coley v. Ashcroft and Dr. v. Ashcroft are submitted on the briefs, as is the case of Thain, Thien v. Ashcroft, and Thien v. Ashcroft. The next case for oral argument.
judges: Reinhardt, Noonan, Clifton